UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-04160-SSS-ADS | Date | July 30, 2026 |
| Title | *Dency Javier Ayala-Barrios v. Warden et al.* | | |

Present: The Honorable     SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:     (IN CHAMBERS) ORDER GRANTING PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [DKT. NO. 2] AND SEALING DOCKET ENTRY NO. 1**

Before the Court is petitioner Dency Javier Ayala-Barrios's ex parte application for a temporary restraining order filed in connection with his petition for writ of habeas corpus. ["Application," Dkt. No. 2]. The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in relation to the Application, the Court **GRANTS** the Application.

## I.     BACKGROUND

On March 24, 2026, petitioner Dency Javier Ayala-Barrios ("Petitioner") filed a petition for writ of habeas corpus. ["Petition," Dkt. No. 1]. Petitioner contends he is entitled to relief because his detention violates the Due Process Clause of the Fifth Amendment. [*Id.*].

On July 24, 2026, Petitioner filed the instant Application. [Application]. In support of the Petition, Petitioner filed several exhibits relevant to his Application.

[Petition at 15–45].  Petitioner seeks release until he receives adequate notice and a hearing to determine the legality of his detention.  [Application at 5–6].

On July 28, 2026, the Government filed a response to the Application, stating they "are not presenting an opposition argument at this time."  [Dkt. No. 10 at 2].

## II.    FACTS

Petitioner is a citizen and national of Colombia who fled "his country due to persecution by the Clan del Golfo, a violent paramilitary and criminal organization."  [Petition ¶ 14].  On or about May 15, 2023, he entered the United States without inspection.  [*Id.*]  Some time thereafter, Petitioner was detained by the Department of Homeland Security and released from custody pursuant to the INA § 212(d)(5)(A).  [*Id.* ¶ 15].  Petitioner was served with a Notice to Appear charging him with being inadmissible under INA § 212(a)(6)(A)(i).  Petitioner has a pending asylum application, but does not have a final order of removal.  [*Id.* ¶ 22].

Following Petitioner's release, he successfully applied for and received employment authorization and a Social Security number.  [*Id.* ¶ 16].  Petitioner has a valid driver's license for Idaho and California.  [*Id.*].  Petitioner consistently worked and filed a federal income tax return for 2025.  [*Id.* ¶ 17].  Petitioner's earnings helped support his one-year-old son, a United States citizen, and partner.  [*Id.* ¶ 18].  Petitioner also sent money to support his children who remain in Colombia, ages 9 and 12.  [*Id.*].

Petitioner does not have a criminal record and has fully complied with his conditions of parole for approximately three years.  [*Id.* ¶ 19].

On June 12, 2026, while working in Rialto, California, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") agents.  [*Id.* ¶ 20.]  Petitioner was not provided with a basis for his arrest and detention, nor has he had the opportunity to challenge his re-detention before an adjudicator.  [*Id.*]

Petitioner remains detained at the Desert View Facility in Adelanto, California.  [*Id.* ¶ 22].

//

//

## III.   LEGAL STANDARD

For the Court to grant an application for a TRO, the moving party must show: (1) that he is "likely to succeed on the merits" of his underlying claim, (2) that he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that "the balance of equities tips in his favor," and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

Courts in the Ninth Circuit may consider the *Winter* factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the *Winter* test").

## IV.   DISCUSSION

### A.   Likelihood of Success on the Merits

Petitioner argues that his detention violates his due process and statutory rights because he had a protected liberty interest in remaining free upon his release on parole.  [Application at 3].  As provided in 8 C.F.R. § 241.13(i)(2), revocation of a noncitizen's release is allowed only if "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  Moreover, ICE is required to provide Petitioner with notice of the reasons for the revocation of his parole.  8 C.F.R. §§ 241.13(h)(4)(i)(2), (3).  Here, the Court finds Petitioner is likely to succeed on the merits or has at least raised "serious questions" regarding the merits of his revocation claim.

"Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.  Thus, a paroled noncitizen, like Petitioner, has a constitutional liberty interest in their continued release from immigration detention. *R.A.N.O. v. Wofford*, 820 F. Supp. 3d 1094, 1103 (E.D.

Cal. 2026) ("While immigration officials may have had discretion over the initial decision to detain or release petitioner, their decision to release an individual from custody created 'an implicit promise' upon which an individual may rely: that his liberty 'will be revoked only if [he] fails to live up to the . . . conditions [of release].'") (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest. Under *Mathews v. Eldridge*, the Court considers three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Under the first factor, Courts have regularly described a petitioner's interest in remaining out of custody as "substantial." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025). The weight of the factor increases as a party remains on bond for an extended period. *Morrissey*, 408 U.S. at 482. Here, Petitioner was previously released on parole in 2023. [Application at 2]. Thus, Petitioner's interest is significant.

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high, with no process offered to Petitioner during his re-detention and no rationale provided for his re-detention. [Petition ¶ 21]. This risk is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose." *Zadvydas*, 533 U.S. at 690. Accordingly, the Court finds that Petitioner faces a substantial risk of an erroneous deprivation of his liberty.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Although the Ninth Circuit's holding arose in a challenge to a different statute governing immigration detention, 8 U.S.C. § 1226(a), the Court finds the Ninth Circuit's reasoning equally availing here. The government's previous decision to release Petitioner on parole demonstrates that the government found that Petitioner was not a danger to the community and that his presence in

future immigration proceedings could be "ensured by . . . alternative conditions."
*Id*.

Accordingly, the Court concludes that Petitioner has demonstrated a
likelihood of success on the merits.

## B.    Likelihood of Irreparable Harm

"It is well established that the deprivation of constitutional rights
'unquestionably constitutes irreparable injury.'"  *Hernandez*, 872 F.3d at 994
(citation modified) (quoting *Melendres*, 695 F.3d at 1002).  "Deprivation of
physical liberty by detention constitutes irreparable harm."  *Arevalo v. Hennessy*,
882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994).
Furthermore, immigration detention imposes collateral irreparable harms on
noncitizens' families, including economic burdens and harms to children whose
parents are detained.  *Hernandez*, 872 F.3d at 995.

Here, as stated above, Petitioner's release has been improperly revoked, and
Petitioner has been unlawfully detained in violation of his constitutional right to
due process.  Petitioner "suffers potentially irreparable harm every day that he
remains in custody without a hearing, which could ultimately result in his release
from detention."  *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018)
(citation modified).  Petitioner is—and will continue to be—irreparably harmed
absent relief from this Court.  As such, Petitioner faces irreparable harm.

## C.    Balance of Equities and Public Interest

The final two *Winter* factors "merge when the Government is the opposing
party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  The Ninth Circuit has
recognized "neither equity nor the public's interest are furthered by allowing
violations of federal law to continue."  *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th
Cir. 2022) (affirming the balance of hardships weighed in favor of plaintiffs
alleging the government violated the INA).  Specifically, in cases involving
removal, "there is a public interest in preventing [noncitizens] from being
wrongfully removed."  *Nken*, 556 U.S. at 436.

Here, because Petitioner has demonstrated a likelihood of success on his
Revocation Claim, the balance of equities and public interest "tips sharply" in his
favor.  *All. for the Wild Rockies*, 632 F.3d at 1135.  Moreover, the Government's
interest in enforcing immigration laws is not compelling because "our system does
not permit agencies to act unlawfully even in pursuit of desirable ends."  *Ala. Ass'n*

*of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582, 585-86 (1952)); *see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), *appeal dismissed*, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016))).  As such, the third and fourth *Winter* factors weigh in favor of Petitioner.

* * * * *

In conclusion, because all four *Winter* factors weigh in favor of Petitioner, Petitioner is entitled to injunctive relief.  As discussed above, Petitioner continues to suffer irreparable harm so long as he remains unlawfully re-detained.  *See Esmail*, 2025 WL 3030590, at *6 ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.").  Further, Petitioner's release is necessary to return him to the status quo, which is "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).  Here, the last uncontested status is Petitioner's release on parole before his current re-detention.  *See Domingo-Ros v. Archambeault*, No. 25-CV-1208-DMS-DEB, 2025 WL 1425558, at *2 (S.D. Cal. May 18, 2025) ("Petitioners seek a prohibitory injunction because they seek to preserve the status quo preceding this litigation—their physical presence in the United States free from detention.").  Accordingly, Petitioner's release from custody is the appropriate remedy.

## V.     CONCLUSION

For the reasons described above, the Court **GRANTS** Petitioner's Application.  [Dkt. No. 2].  Accordingly, Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner (A# 246 809 052) from custody forthwith, and shall not impose any release restrictions on Petitioner, such as electronic monitoring, unless deemed necessary at a future pre-deprivation hearing.

Further, Respondents are **ENJOINED** from re-detaining Petitioner unless they first follow the appropriate statutory procedures, including providing Petitioner with adequate pre-deprivation notice and a meaningful opportunity to

respond.  Respondents are **ORDERED** to return to Petitioner any seized identity documents at the time of his release.

Respondents are **ORDERED** to file a status report certifying compliance with the above order of release **within three (3) days** from the date of this Order. The Court directs the parties to present all subsequent matters in this case to the Magistrate Judge.

Lastly, given the sensitive nature of exhibits filed in support of the Petition, the Court **DIRECTS** the Clerk of Court to **SEAL** Docket Entry No. 1.

**IT IS SO ORDERED**.